## United States District Court
## District of Massachusetts

```
_____
                                  )
American Institute for Foreign    )
Study, Inc. d/b/a Au Pair in      )
America and William L. Gertz,     )
                                  )
        Plaintiffs,               )
                                  )
            v.                    )    Civil Action No.
                                  )    20-10920-NMG
Laura Fernandez-Jimenez,          )
                                  )
        Defendant.                )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This is an action for declaratory judgment in which plaintiffs American Institute for Foreign Study, Inc., doing business as Au Pair in America ("APIA"), and William L. Gertz ("Gertz", collectively with APIA, "plaintiffs") seek injunctive relief to compel Laura Fernandez-Jimenez ("defendant" or "Fernandez-Jimenez") to arbitrate her claims against plaintiffs on an individual basis rather than on behalf of herself and a putative class or collective action.

Pending before the Court, at this point, is plaintiff's motion for a preliminary injunction.

I.    **Background**

   **A. Parties**

   APIA is a Delaware corporation with its principal place of business in Stamford, Connecticut.  APIA is a sponsor organization authorized by the United States Department of State ("DOS") to facilitate a cultural exchange program with foreign nationals pursuant to the DOS J-1 Visa Au Pair Program ("the Au Pair Program").

   Gertz is APIA's Chairman, President and Chief Executive Officer.  He resides in Connecticut.

   Fernandez-Jimenez is a Spanish national residing temporarily in the United States on a J-1 non-immigrant Visa. She has participated as an au pair in the Au Pair Program since August, 2018.

   **B. Factual Background**

   The Au Pair Program provides an opportunity for young foreign nationals to reside temporarily with a host family in the United States while providing childcare and attending college classes.  The program was designed and operates to

>    increase mutual understanding between the people of
>    the United States and the people of other countries
>    [thereby] assist[ing] in the development of friendly,
>    sympathetic, and peaceful relations

between the United States and participating countries. 22 U.S.C.
§ 2451.

As part of the application process to become an au pair,
Fernandez-Jimenez was required to review and execute an
agreement titled "Au Pair in America Terms and Conditions" ("the
Terms & Conditions Agreement").  Relevant to the instant
dispute, the Terms & Conditions Agreement contains an
arbitration provision ("the Arbitration Provision") which
provides:

> This Agreement shall be governed by the laws of the
> State of Connecticut.  I agree that any dispute with
> or claim against [the American Institute for Foreign
> Study ("AIFS")], its staff, agents and all affiliated
> organizations, including those arising under this
> Agreement or my participation in the [Au Pair]
> Program, which is not settled informally, will be
> exclusively resolved by binding arbitration, to be
> conducted in substantial accordance with the
> commercial arbitration rules of the American
> Arbitration Association. The location of the
> arbitration and identity of the arbitrator will be
> decided by mutual agreement, with the costs to be
> borne exclusively by the [Au Pair] Program and the
> decision of the arbitrator shall be final. By
> accepting the terms of this Agreement, I agree that
> the U.S. Federal Arbitration Act governs the
> interpretation and enforcement of this Agreement and
> that I, Au Pair in America, and AIFS are each waiving
> the right to judicial and/or administrative agency
> resolution of disputes, any right to trial by jury, as
> well as the right to bring and resolve claims, either
> in an individual capacity or as a member of any class
> action, by any means and in any forum other than
> arbitration conducted by the American Arbitration
> Association.

Fernandez-Jimenez signed the Terms & Conditions Agreement on May 18, 2018. APIA is a party to that agreement but Gertz, individually, is not.

Fernandez-Jimenez matched with a host family in Massachusetts and resided with that family from August, 2018, through April, 2019. Thereafter, she applied for a secondary placement with a new host family and remains a participant elsewhere in the Au Pair Program.

### C. Procedural Background

In January, 2020, Fernandez-Jimenez filed a complaint in the Massachusetts Superior Court for Middlesex County on behalf of herself and a class of similarly situated individuals for alleged violations of the Massachusetts Wage Act, Mass. Gen. Laws c. 149, § 148 and c. 151 § 1A. Fernandez-Jimenez voluntarily dismissed her complaint in February, 2020, and, on that same day, filed a class arbitration demand with the American Arbitration Association ("AAA").

The AAA submitted a letter to the parties informing them that "the arbitration agreement submitted with the demand . . . prohibits class, collective, or joint actions" and, for that reason, AAA was unable to administer the matter as a class. Fernandez-Jimenez responded that the Terms & Conditions Agreement does not preclude class actions but rather "states

that the AAA is the exclusive forum for all claims, including individual and class claims." APIA responded with a letter of its own endorsing the AAA's position but AAA ultimately referred the question of arbitrability on a class basis to the chosen arbitrator.

Both parties continued to participate in the arbitration. On February 21, 2020, an administrative conference was convened by the AAA at which the parties discussed arbitration locale and the selection of an arbitrator. Plaintiffs filed their answer to Fernandez-Jimenez's class arbitration demand and preserved their right to argue that the matter is not arbitrable on a class or collective basis.

In April, 2020, Fernandez-Jimenez filed an amended demand for class and collective action arbitration, asserting additional claims for common law negligent misrepresentation, fraud, breach of duty and federal claims for minimum wage and overtime payments pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("the FLSA"). On May 13, 2020, the AAA advised the parties that an arbitrator had been appointed.

The following day, plaintiffs filed their complaint in this Court seeking declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that (1) the Court is exclusively authorized to decide the class arbitrability issue (Count I), (2) defendant's claims

cannot proceed on a class or collective basis (Count II) and (3) the Court should enter an order compelling defendant to submit all claims against plaintiffs to binding arbitration on an individualized basis pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 ("the FAA") (Count III).  That same day, plaintiffs filed the instant motion for a preliminary injunction.

This Court convened a hearing by videoconference regarding that motion on June 15, 2020, at which defendant conceded that this Court should decide the issue of class arbitrability.

Shortly before the June 15 hearing, Fernandez-Jimenez filed a separate action in the Massachusetts Superior Court for Middlesex County on behalf of herself and a class of similarly situated individuals against Gertz but not the APIA.  In that action, Fernandez-Jimenez alleges violations of the Massachusetts Wage Act (Count I) and breach of duty (Count II). Gertz removed that case to this Court on diversity grounds and it was assigned to this Session as a related case. See Fernandez-Jimenez v. Gertz, No. 20-cv-10920-NMG.

## II.  **Motion for a Preliminary Injunction**

### A.  **Legal Standard**

To obtain a preliminary injunction, the moving party must establish (1) a reasonable likelihood of success on the merits, (2) the potential for irreparable harm if the injunction is

withheld, (3) a favorable balance of hardships and (4) a
consideration of the effect on the public interest. <u>Jean</u> v.
<u>Mass. State Police</u>, 492 F.3d 24, 26-27 (1st Cir. 2007).  Out of
these factors, the likelihood of success on the merits "normally
weighs heaviest in the decisional scales." <u>Coquico, Inc.</u> v.
<u>Rodriguez-Miranda</u>, 562 F.3d 62, 66 (1st Cir. 2009).  Fernandez-
Jimenez contests only the first factor.

The Court may accept as true "well-pleaded allegations [in
the complaint] and uncontroverted affidavits." <u>Rohm & Haas Elec.
Materials, LLC</u> v. <u>Elec. Circuits</u>, 759 F. Supp. 2d 110, 114, n.2
(D. Mass. 2010) (quoting <u>Elrod</u> v. <u>Burns</u>, 427 U.S. 347, 350, n.1
(1976)).  The Court may also rely on otherwise inadmissible
evidence, including hearsay, in deciding a motion for
preliminary injunction. <u>See</u> <u>Asseo</u> v. <u>Pan Am. Grain Co.</u>, 805 F.2d
23, 26 (1st Cir. 1986).  Ultimately, the issuance of preliminary
injunctive relief is "an extraordinary and drastic remedy that
is never awarded as of right." <u>Peoples Fed. Sav. Bank</u> v.
<u>People's United Bank</u>, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting
<u>Voice of the Arab World, Inc.</u> v. <u>MDTV Med. News Now, Inc.</u>, 645
F.3d 26, 32 (1st Cir. 2011)).

### B.  Application

Plaintiffs seek injunctive relief on the grounds that:
(1) the Court must decide the availability of class or

collective arbitration pursuant to the Terms & Conditions
Agreement; (2) defendant may not arbitrate her claims against
plaintiffs on a class or collective basis; and (3) defendant may
not pursue any claims against plaintiffs on a class or
collective basis.

It is undisputed that Gertz is not a party to the Terms &
Conditions Agreement.  Nevertheless, the parties draw no
analytical distinction between APIA and Gertz for purposes of
plaintiffs' preliminary injunction motion.  The Court, however,
finds it necessary to address the propriety of injunctive relief
with respect to each plaintiff separately.

### 1. APIA's Likelihood of Success on the Merits

#### a. Whether Class or Collective Arbitrability is a Question for the Court

APIA contends that whether Fernandez-Jimenez can arbitrate
her claims on a class or collective basis is a question of
arbitrability for the Court rather than for the appointed
arbitrator.  At the preliminary injunction hearing, Fernandez-
Jimenez informed the Court that she now consents to the Court
deciding the arbitrability of this putative class action.
Notwithstanding that concession, the Court will address the
issue for the record.

Whether the availability of class or collective arbitration
is for the Court to decide depends upon whether it is classified

-8-

as a "question of arbitrability" reserved for the court or a subsidiary issue that devolves to the arbitrator. See Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 n.2 (2013). Questions of arbitrability are

> gateway matters such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.

Id. Subsidiary issues, on the other hand, "grow out of the dispute and bear on its final disposition." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 569 n.2 (2013).

In Oxford Health, the United States Supreme Court considered a case in which the arbitrator determined whether class arbitration was available. 569 U.S. at 566.  The arbitrator's authority to make that decision was not, however, properly before the Court. Id. at 569 n.2.  In reserving the issue, the Court clarified that it "ha[d] not yet decided whether the availability of class arbitration is a question of arbitrability." Id.

The Supreme Court has provided no additional guidance since Oxford Health but every circuit court of appeals that has addressed the issue after that decision has concluded that the availability of class or collective arbitration is a "question of arbitrability" for the court. See Del Webb Cmtys., Inc. v. Carlson, 817 F.3d 867, 877 (4th Cir. 2016); 20/20 Commc'ns, Inc.

v. Crawford, 930 F.3d 715, 718-19 (5th Cir. 2019); Reed
Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F.3d
594, 599 (6th Cir. 2013); Herrington v. Waterstone Mortg. Corp.,
907 F.3d 502, 506-11 (7th Cir. 2018); Catamaran Corp. v.
Towncrest Pharmacy, 864 F.3d 966, 971-72 (8th Cir. 2017); Eshagh
v. Terminix Int'l Co., 588 F. App'x 703, 704 (9th Cir. 2014);
JPay, Inc. v. Kobel, 904 F.3d 923, 930-36 (11th Cir. 2018).

The First Circuit Court of Appeals addressed the issue
prior to Oxford Health in Skirchak v. Dynamics Research Corp.,
508 F.3d 49 (1st Cir. 2007).  In that case, the First Circuit
interpreted a prior plurality decision of the Supreme Court,
Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003), as
"ma[king] clear that . . . the question of whether class
arbitration is forbidden is not a question of arbitrability."
Skirchak, 508 F.3d at 56.  The Supreme Court, however, disavowed
that interpretation of Bazzle in Oxford Health. Oxford Health,
569 U.S. at 569 n.2; see also Lamps Plus, Inc. v. Varela, 139 S.
Ct. 1407, 1417 n.4 (2009) ("This Court has not decided whether
the availability of class arbitration is a so-called 'question
of arbitrability,' which includes these gateway matters."
(quoting Oxford Health, 569 U.S. at 569 n.2)).  For that reason,
Skirchak is not controlling.

Consistent with the seven other circuits that have addressed this issue after Oxford Health, the fundamental difference between class/collective arbitration and individual arbitration compels the conclusion that the choice between the two is a question of arbitrability.

The primary substantive difference is, of course, that in class arbitration, any award of the arbitrator purports to bind the bilateral parties as well as the absent class members. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 686 (2010).  Classes also present unique due process concerns.  Reed Elsevier, Inc. ex rel. LexisNexis Div., 734 F.3d at 589-99.

The practical consequences of proceeding with class rather than individual arbitration are compelling as well.  For one, class arbitration discombobulates certain procedural benefits of bi-lateral arbitration such as efficiency and cost. See, e.g., Del Webb Cmtys., Inc., 817 F.3d at 875.  Class arbitration also effectively eviscerates the privacy and confidentiality aspects often associated with individual arbitration. Stolt-Nielsen S.A., 559 U.S. at 686.

These intrinsic differences demonstrate that whether the parties agreed to proceed to arbitration on a class or individual basis is a foundational question of arbitrability for the Court to decide absent a clear and unambiguous delegation of

such authority to the arbitrator. See, e.g., Rent-A-Center,
West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010) ("[P]arties can
agree to arbitrate gateway questions of arbitrability."); see
also First Options of Chi. v. Kaplan, 514 U.S. 938, 944 (1995)
(concluding that any delegation must "clearly and unmistakably"
afford the arbitrator with the authority to decide the question
of arbitrability).  The parties agree that there is no such
delegation in the Terms & Conditions Agreement.

Accordingly, APIA has demonstrated a reasonable likelihood
of success on the merits of its contention that the availability
of class arbitration is a question for the Court rather than an
arbitrator to decide.  The Court will, therefore, proceed to
that question.

### b. Whether the Terms & Conditions Agreement Prohibits Class or Collective Arbitration

APIA and Fernandez-Jimenez disagree as to whether two
clauses in the Arbitration Provision demonstrate sufficient
express or implied consent to compel class or collective
arbitration.  The "Substantial Accordance Clause" provides that

> [Fernandez-Jimenez] agree[s] that any dispute with or
> claim against AIFS, its staff, agents and all
> affiliated organizations, including those arising
> under this Agreement or [her] participation in the
> Program, which is not settled informally, will be
> exclusively resolved by binding arbitration, **to be
> conducted in substantial accordance with the
> commercial arbitration rules of the American
> Arbitration Association**. (emphasis supplied).

The "Waiver Clause", in turn, provides that

> By accepting the terms of this Agreement . . .
> [Fernandez-Jimenez], Au Pair in America, and AIFS are
> each waiving the right to judicial and/or
> administrative agency resolution of disputes, any
> right to trial by jury, as well as the right to bring
> and resolve claims, **either in an individual capacity
> or as a member of any class action, by any means and
> in any forum other than arbitration conducted by the
> American Arbitration Association**. (emphasis supplied).

Fernandez-Jimenez contends that (1) the Waiver Clause
plainly contemplates the availability of arbitration as an
alternative forum for both "claims . . . in an individual
capacity or as a member of a class action" and (2) assuming
arguendo that the Waiver Clause does not supply the requisite
express consent, the incorporation of the rules of the AAA in
the Substantial Accordance Clause demonstrates that APIA
implicitly consented to class arbitration.

APIA responds that (1) defendant misreads the Waiver Clause
which applies only to the scope of the litigation waiver and not
to the scope of arbitration and (2) the Substantial Accordance
Clause is silent as to class or collective arbitration and the
reference to the rules of the AAA is insufficient to imply
consent.

The FAA requires a court to "enforce arbitration agreements
according to their terms." Epic Sys. Corp. v. Lewis, 138 S. Ct.
1612, 1621 (2018).  In that sense, arbitration is "strictly a
matter of consent," Granite Rock Co. v. Teamsters, 561 U.S. 287,

299 (2010), and the role of the Court is "to give effect to the intent of the parties," Lamps Plus, Inc., 139 S. Ct. at 1416. Because class arbitration effectively "undermine[s] the central benefits of arbitration itself," id. at 1417, a court may not compel class arbitration "unless there is a contractual basis for concluding that the party agreed" to arbitrate on a class basis. Stolt-Nielsen, 599 U.S. at 684 (emphasis in original). Neither silence, nor ambiguity is sufficient. Lamps Plus, Inc., 139 S. Ct. at 1416.  Consent may, however, be implied from the terms of an arbitration agreement. See Jock v. Sterling Jewelers Inc., 942 F.3d 617, 626 (2d Cir. 2019) (citing Lamps Plus, Inc. and Stolt-Nielsen).

Focusing first on defendant's arguments regarding the Waiver Clause, the Court agrees with APIA that the purpose of that clause within the context of the Arbitration Provision must be considered.  Specifically, the Waiver Clause pertains to the parties' mutual waiver of the right to pursue litigation.  In doing so, it identifies the scope of the litigation waiver as applying to all claims whether brought individually or on behalf of a class.  In contrast, the Substantial Accordance Clause furnishes the scope, form and method of arbitration.  It identifies the kinds of claims that must be submitted to arbitration ("any dispute . . . including those arising under this Agreement or [her] participation in the Program") and the

-14-

form and method of arbitration ("binding" and "in substantial accordance with the commercial arbitration rules of the [AAA]").

Although two sides of the same coin, the Substantial Accordance Clause deals with the substance of arbitration, the Waiver Clause with avoiding litigation.  Waiving the right to pursue a class action litigation does not address the scope of the agreed upon arbitration or whether it includes consent to class or collective arbitration as an alternative.  The Court therefore concludes that the Waiver Clause does not provide the requisite consent to proceed with class or collective arbitration.

Defendant argues, in the alternative, that if the Waiver Clause fails to provide the requisite express consent, reference in the Substantial Accordance Clause to the "rules of the American Arbitration Association" demonstrates that APIA implicitly consented to class or collective arbitration.

In support of her argument, defendant cites to Jock v. Sterling Jewelers Inc. ("Jock IV") in which the Second Circuit Court of Appeals reviewed a district court's order vacating an arbitrator's determination that the parties agreed to binding class arbitration. 942 F.3d at 620.  In Jock IV, the parties signed an arbitration agreement that provided for the strict application of the rules of the AAA. Id. at 623.  The district

-15-

court held that the arbitrator exceeded her authority in deciding the availability of class arbitration because the contract did not delegate such authority to the arbitrator. Id. at 623.

The Second Circuit reversed and held that, by agreeing to be bound by the rules of the AAA, the parties necessarily incorporated the AAA Supplementary Rules for Class Arbitration ("the Supplementary Class Rules"). Id. at 623.  Rule 3 of the Supplementary Class Rules provides that "the arbitrator shall determine as a threshold matter" the availability of class arbitration. Id. at 623.  The court concluded that incorporation of the Supplementary Class Rules, including Rule 3, properly delegated to the arbitrator the question of whether class arbitration was available. Id.  Consequently, the district court erred in failing to treat the arbitrator's decision with respect to that question with the "extremely deferential standard of review" applicable to a federal court's assessment of an arbitrator's award. Id. at 622.

Relying on Jock IV, defendant contends that the reference to the AAA rules in the Substantial Accordance Clause similarly incorporates the Supplementary Class Rules and, therefore, provides implicit consent to class arbitration.

First, this Court is not bound by Jock IV but even if it were, Jock IV is distinguishable.  The arbitration agreement in Jock IV contained a general reference to the rules of the AAA but here, the Substantial Accordance Clause refers only to the "commercial arbitration rules of the [AAA]" ("the Commercial AAA Rules") which do not address the availability of class actions. Furthermore, the Jock IV agreement to arbitrate required strict compliance with the AAA rules whereas the Substantial Accordance Clause requires only "substantial" compliance with the Commercial AAA Rules.

Aside from the factual distinctions, defendant misreads the holding of Jock IV.  Nothing in that case indicates that consent to class arbitration can be inferred from incorporation of the Supplementary Class Rules.  Jock IV stands only for the proposition that, in the Second Circuit, consent for an arbitrator to decide whether class arbitration is available can be inferred from an agreement to be bound by the rules of the AAA. Id.  To conclude, however, that such consent can generally be inferred from such a broad reference would be contrary to the long line of Supreme Court precedent requiring a specific contractual basis for concluding that parties have agreed to class arbitration. See, e.g., Stolt-Nielsen, 599 U.S. at 684.

The Supplementary Class Rules themselves, as well as their application in <u>Jock IV</u>, further support that conclusion.  Rule 3 of the Supplementary Class Rules provides that

> [i]n construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

Although the Supplementary Class Rules can be utilized to delegate to the arbitrator the question of whether class arbitration is available, the mere reference to those rules does not decide the question on the merits.  The Court therefore concludes that, even if the reference to the Commercial AAA Rules incorporates the Supplemental Class Rules, such an incorporation is insufficient to provide implicit consent to class or collective arbitration.

In the absence of any affirmative or implicit consent, the Court finds that the Arbitration Provision is, at best, ambiguous as to the availability of class or collective arbitration.  To determine whether the terms of an arbitration agreement are ambiguous, courts ordinarily look to state contract law. <u>First Options of Chi., Inc.</u>, 514 U.S. at 944. State law is, however, preempted to the extent that it "stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of [the FAA]." <u>AT&T Mobility LLC</u> v. <u>Concepcion</u>, 563 U.S. 333, 352 (2011).

The Terms & Conditions Agreement in this case appears to require the application of Connecticut law even though the parties presume that Massachusetts law applies.  Given the choice of law provision in the Terms & Conditions Agreement, the Court finds that Connecticut law applies but it would reach the same result under Massachusetts law. <u>See</u> <u>Citation Ins. Co.</u> v. <u>Gomez</u>, 426 Mass. 379, 381 (1998).

Under Connecticut law, a contract is ambiguous if the intent of the parties is unclear from the text of the contract. <u>Alstom Power, Inc.</u> v. <u>Balcke-Durr, Inc.</u>, 849 A.2d 804, 812 (Conn. 2004).  A contract is also ambiguous if its text is susceptible to more than one "reasonable interpretation." <u>19 Perry St., LLC</u> v. <u>Unionville Water Co.</u>, 987 A.2d 1009, 1018 (Conn. 2010).

After a term is deemed ambiguous pursuant to state law, it is, as a matter of federal law, insufficient to compel class or collective arbitration. <u>See</u> <u>Lamps Plus, Inc.</u>, 139 S. Ct. at 1415 ("The [FAA] therefore requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis.").  For example, in <u>Murray</u> v. <u>Transportation Media, Inc.</u>, a magistrate judge considered whether an arbitration agreement

provided sufficient consent for the court to compel class
arbitration. No. 19-cv-180-JR, 2019 WL 7144115, at *1 (D. Or.
Oct. 17, 2019), report and recommendation adopted, 2019 WL
7134413 (D. Or. Dec. 23, 2019). The agreement stated that
arbitrable disputes included

> claim[s] for wages or other compensation (whether
> brought by or on behalf of one or more employees).

Id. at *6. Because that provision did not state whether a
claim brought by one employee on behalf of others must be
"similarly situated" as required for collective actions
under the FLSA, the magistrate judge recommended, and the
district judge adopted, holding that the provision was
ambiguous and insufficient to provide the requisite consent
for collective arbitration. Id.

The Arbitration Provision in this case is similarly
ambiguous. On the one hand, defendant proffers a plausible
interpretation of the Waiver Provision as implying that the
parties agreed arbitration would be an alternative for all
claims arising out of the Terms & Conditions Agreement,
including class claims. On the other hand, the same language,
when read in the context of the Substantial Accordance
Provision, appears to be limited to a litigation waiver. The
incorporation of the AAA rules is ambivalent. Consequently, the
Arbitration Provision fails to convey the intent of the parties,

is subject to conflicting interpretations and is, therefore, ambiguous.

Accordingly, the Arbitration Provision fails to provide the requisite consent to defendant to proceed with class or collective arbitration against APIA.  APIA has demonstrated a reasonable likelihood of success on the merits of that claim.

### c. Whether Defendant May Pursue Claims Against Plaintiffs on a Class-Wide or Collective Basis

APIA seeks to enjoin Fernandez-Jimenez from pursuing class or collective action claims against it.  The parties have apparently agreed that the Terms & Conditions Agreement bars defendant from bringing any kind of suit against APIA on an individual, class or collective basis.  APIA has, therefore, demonstrated a reasonable likelihood of success on the merits of that claim.

### 2. Remaining Preliminary Injunction Factors with respect to APIA

Defendant's opposition to the motion for a preliminary injunction focuses on the merits of APIA's claims.  She proffers no opposition with respect to the remaining preliminary injunction factors and, at oral argument, conceded that she has none.  The Court is, nevertheless, required to analyze such factors prior to granting injunctive relief.

With respect to the second factor, various courts have held that requiring a party to submit to arbitration in the absence of consenting to do so constitutes "per se irreparable injury." See, e.g., AT&T Mobility LLC v. Princi, No. 11-11448-RWZ, 2011 WL 6012945, at *1 (D. Mass. Dec. 2, 2011); Servicemaster Holding Corp. v. Hall, No. 13-CV-02980-JPM-dkv, 2013 WL 12098758, at *3 (W.D. Ten. Dec. 20, 2013).  This Court agrees.

As to the third factor, APIA contends, and the Court agrees, that compelling arbitration without proper consent would cause them to suffer a substantial hardship.  Fernandez-Jimenez, on the other hand, merely faces a delay in the ultimate arbitration of her claims for which she may be entitled to collect interest should she recover damages.  Accordingly, the balance of hardships weighs in favor of plaintiffs.

Finally, APIA submits that a preliminary injunction will not harm the public interest.  To the contrary, an injunction will purportedly serve the public by promoting the strong public policy in favor of enforcing arbitration agreements in accordance with the intent of the parties.  Defendant proffers no reason why an injunction would harm the public interest and the Court discerns none.

Having determined that APIA has satisfied all of the prerequisites for injunctive relief, the Court will enter the

requested injunction in APIA's favor and against Fernandez-Jimenez.

### 3.   Gertz

Gertz is not a party to the Terms & Conditions Agreement. In their submissions to this Court, however, the parties treat Gertz in a manner identical to APIA without analyzing the import of his status as a non-party to the Agreement.  At oral argument, plaintiffs' counsel suggested that Gertz may be subject to the Arbitration Provision on a theory of agency or estoppel but failed to proffer any reasoning in support.

As explained above, a preliminary injunction is "an extraordinary and drastic remedy." Peoples Fed. Sav. Bank, 672 F.3d at 8-9 (quoting Voice of the Arab World, Inc., 645 F.3d at 32).  An injunction is never awarded as of right and it is the burden of the moving party to establish that all four preliminary injunction factors are met. Id; see also Jean, 492 F.3d at 26-27.

The Court will not presume that Gertz is entitled to injunctive relief merely because it has concluded that APIA is. Gertz has proffered no independent reason as to why he is entitled to such relief.  For that reason, the Court will deny the motion for preliminary injunction with respect to Gertz.

**ORDER**

For the foregoing reasons, plaintiffs' motion for a preliminary injunction (Docket No. 3) is, with respect to the claims of Gertz, **DENIED,** but otherwise **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 19, 2020